# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT A. MATTESON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:06CV1605CDP/MLM** |
| | ) | |
| **MICHAEL BOWERSOX,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Robert A. Matteson ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 11. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 5.

## I.
## BACKGROUND

Petitioner was charged "as a prior and persistent offender with four court counts, including first degree trafficking and possession of a chemical to create a controlled substance." Resp. Ex. G at 1. The State "dismissed its counts for unlawful drug paraphernalia and possession of anhydrous ammonia in a non-approved container. After the selection of the jury panel, [Petitioner] withdrew his pleas of not guilty to trafficking and possession of a chemical to create a controlled substance." Resp. Ex. G at 1-2.

The prosecutor read the charges against Petitioner and said that Petitioner was charged in

Count I, "with acting in concert with another in committing the Class A felony of trafficking in the first degree, in that on or about June 29th, 2003, in the County of St. Charles, State of Missouri, [Petitioner] knowingly manufactured by chemical synthesis more than 30 grams of mixture or preparation containing any quantity of methamphetamine, a controlled substance, knowing that it was a controlled substance." Resp. Ex. C at 12. The prosecutor further stated that in Count II, Petitioner was charged "with acting in concert with another in committing the Class C felony of possession of a chemical to create a controlled substance in that on or about June 29th, 2003, in the County of St. Charles, State of Missouri, [Petitioner] knowingly possessed pseudoephedrine with the intent to process that chemical to create methamphetamine, a controlled substance." Resp. Ex. C at 12-13.

Prior to accepting his guilty plea Petitioner informed the court, as to Count I, that he did commit the Class A felony of trafficking in the first degree for events occurring on or about June 29, 2003; that, at Carpenter Drive in St. Peters, he "knowingly manufactured by chemical synthesis more than 30 grams of a mixture or preparation containing any quantity of methamphetamine"; that the mixture contained ephedrine, anhydrous ammonia, and lithium from batteries; and that he knew at the time that methamphetamine was a controlled substance. Resp. Ex. C at 26-28. In regard to Count II, Petitioner informed the court that he "commit[ted] the offense of the Class C felony of possession of a chemical to create a controlled substance for events occurring on or about June 29, 2003, which events happened at the same location in St. Peters"; that on this date and location he knowingly possessed two "blister packs [of pseudoephedrine] crushed and broken down," a total of forty-eight pills; that he "crushed them with the intent to process that chemical to create methamphetamine" ; that he knew on June 29, 2003 that methamphetamine was a controlled substance; and that he possessed the pseudoephedrine with the intent to manufacture methamphetamine. Resp. Ex. C at

31-33. Petitioner denied that he acted in concert with another. The State filed a Second Amended Information which deleted the allegations in Counts I and II that Petitioner acted in concert; the Second Amended Information alleged that Petitioner was acting on his own and without anyone else's assistance. Resp. Ex. A at 11-13; Resp. Ex. C at 37. The court explained to Petitioner that the State deleted the acting in concert provisions of the charges against him and Petitioner stated that the allegations of the Second Amended Information that he was acting alone were true. Resp. Ex. A at 37.

Petitioner did not dispute that he previously pleaded guilty to a felony offense related to a controlled substance for events occurring on October 10, 1997; that he pleaded guilty to the felony of sale of a controlled substance for events occurring on April 14, 1997; and that he pleaded guilty to the felony of sale of a controlled substance for events occurring on October 22, 1997.[1] Resp. Ex. C at 13-14, 33-34. Petitioner agreed that he was a prior and persistent offender and that his prior offenses elevated his status to that of a prior drug offender and that this status carried the possibility that he would be sentenced without the possibility of probation or parole. Resp. Ex. C at 34.

After accepting Petitioner's guilty plea and finding Petitioner guilty as charged, including that he was a prior and persistent offender, the court sentenced Petitioner to twenty-five years imprisonment for trafficking which term is to be served concurrently with a fifteen-year sentence for possession of a chemical to create a controlled substance. Resp. Ex. C at 39-40; Resp. Ex. G at 2.

Petitioner filed a pro se post-conviction relief motion. Resp. Ex. A at 2-25. Counsel filed an Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for

---

[1]    Petitioner did not dispute the factual allegations regarding the charges to which he previously pleaded guilty although he stated that his prior offenses were really only one transaction. Resp. Ex. C at 16.

Evidentiary Hearing. Resp. Ex. A at 26-39. The motion court denied Petitioner's post-conviction relief motion. Resp. Ex. 40-41. On December 1, 2005, Petitioner filed an appeal with the Missouri appellate court. Resp. Ex. E. By Order, dated April 13, 2006, the Missouri appellate court denied Petitioner's appeal and affirmed the judgment of the trial court. Resp. Ex. G.

On November 2, 2006, Petitioner filed his § 2254 Petition in which he raises the following issue: Petitioner was denied effective assistance of trial counsel because plea counsel assured him that if he pleaded guilty the court would impose no more than a ten to fifteen-year sentence. Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim."

Id. (citation omitted).   As Petitioner presented the same issue which he presents in his § 2254

Petition to the Missouri appellate court, the court finds that Petitioner has not procedurally defaulted

the issue of his § 2254 Petition and that he has exhausted his State remedies.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant

to § 2254.   The court finds that Petitioner's § 2254 Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"),

applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

April 24, 1996.   Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).   In conducting habeas review

pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court."   28 U.S.C. § 2254(d)(1).   "'Federal law, as determined by the

Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions.'" Evenstad v. Carlson, Slip Op. 05-1467 at 6 (8th Cir. Nov. 30, 2006).   "To obtain habeas

relief, [a habeas petitioner] must be able to point to the Supreme Court precedent he thinks the []

state courts acted contrary to or applied unreasonable."   Id. at 7 (citing Buchheit v. Norris, 459 F.3d

849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)).   Thus, where

there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either

that a state court decision is "'contrary to, or involved an unreasonable application of, clearly

established Federal law' under 28 U.S.C. § 2254(d)(1)." Id. at 8.   "When federal circuits disagree as

to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1).

Id. at 7-8 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)).  See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court."  Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law.  See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also

Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

## IV.
## DISCUSSION

Petitioner contends in his § 2254 Petition that he was denied effective assistance of trial counsel because plea counsel assured him that if he pleaded guilty the court would impose no more than a ten to fifteen-year sentence. Petitioner contends that he relied on his counsel's alleged promise in deciding to plead guilty and that he was prejudiced by counsel's conduct because he would not have pleaded guilty but would have insisted on going to trial absent counsel's alleged promise.

Upon addressing this issue the Missouri appellate court held, in relevant part, as follows:

... To prevail on a claim of ineffective assistance of counsel, Movant must show (1) that counsel failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances; and (2) that Movant was prejudiced thereby. State v. Stillings, 882 S.W.2d 696, 702 (Mo. App.

S.D. 1994). In the context of a guilty plea, the effectiveness of counsel is relevant only to the extent it affected the voluntariness of the plea. Willoughby, 81 S.W.3d at 679.

A guilty plea must be made knowingly and voluntarily. Johnson v. State, 921 S.W.2d 48, 50 (Mo. App. W.D. 1996). Mistaken beliefs about sentencing may affect a movant's ability to knowingly enter a guilty plea if (1) the mistake is reasonable; and (2) the mistake is based on a positive representation upon which the movant is entitled to rely. Id. When a movant claims to have plead guilty based on a mistaken belief about his sentence, we look at the record of the guilty plea to determine whether that belief is reasonable. Willoughby, 81 S.W.3d at 680.

At the plea hearing, the court explained that because Movant rejected the State's original offer of a twenty-five-year-cap on his sentence, it would review the entire penalty range as to both counts. Movant responded that he understood. Movant further stated he discussed pleading guilty with his counsel and no one told him to say anything other than the truth. He told the court that Counsel explained the effect of his prior and persistent offender status and that he understood the penalty range for each count. In particular, he agreed he understood that the range for first degree trafficking was ten to thirty years or life imprisonment without the possibility of probation or parole. He stated he had enough time to discuss the terms of the penalty range with Counsel.

The court specifically explained to Movant it would sentence him whether or not the case went before a jury and that the entire penalty range was open to the court. Movant responded that he understood. The court repeated that it need not follow the recommendation of any pre-sentence investigation, that it would make the final decision as to sentencing, and that it had the entire penalty range available to it. The court then asked whether anyone predicted what Movant's sentence would be or made any promises or side agreements Movant was told not to reveal to the court. Movant responded no and that he understood he was under oath and had to fully and completely answer the court's questions. He stated no one forced, threatened or coerced him to plead guilty and no one made any type of promises to induce him to enter the guilty pleas.

Based on the foregoing, the record indicates Movant's mistaken belief that he would only receive a ten-to-fifteen year sentence is unreasonable and not based on positive representations upon which Movant was entitled to rely. Movant repeatedly assured the court he understood the entire penalty range was available to the court at sentencing. The record discloses no positive misrepresentations made to Movant. Finally, the record specifically refutes Movant's allegation that Counsel predicted or promised him a lesser sentence based on Movant's responses to the court's questions of whether anyone predicted his sentences or made any promises in that regard. Even

assuming Counsel did promise a particular sentence, an attorney's mere prediction of a sentence or of the punishment the court will impose does not necessarily constitute coercion which renders a guilty plea involuntary. White v. State, 954 S.W.2d 703, 706 (Mo. App. W.D. 1997). Movant knew the range of punishment and that the court could utilize the entire range. He had the opportunity to raise his concerns about Counsel's alleged promises at the sentencing hearing but did not. ... Furthermore, we note Defendant is no stranger to the criminal justice system, having previously pled to other felony offenses. Movant's point is denied.

Resp. Ex. G at 3-5.

The court notes that at Petitioner's plea hearing the court questioned Petitioner as follows:

[THE COURT]: ... do you understand that the penalty range on Count 1 ... for - it's a Class A felony, which carries a penalty range of 10 years up to 30 years or life imprisonment, but because of the prior drug offender status that is without the possibility of probation or parole. Do you understand that?

[PETITIONER]: Yes, Your Honor.

...

[THE COURT]: Then as to Count 2, because this is a Class C felony, the normal penalty range would be from one day up to seven years confinement, and a fine of from a dollar up to $5,000. That's the normal penalty range. But because of the operation of Senate Bill 5, since you have been pleaded and proven to be a prior offender and a persistent offender the upper range of that penalty is increased up to the maximum penalty for a B felony. So, the penalty range now is from one day up to 15 years, and also the fine provision does remain so the maximum penalty on this offense enhanced would be 15 years and a $5,000 fine. The minimum would be one day or one dollar. Do you agree with that?

[PETITIONER]: I do agree, Your Honor.

...

[THE COURT]: So the maximum total penalty here would be 30 years or life for Count 1, without possibility of probation or parole. And in addition, the maximum term of 15 years plus a $5,000 fine for Count 2. Do you understand that Mr. Matteson?

[PETITIONER]: Yes, Your Honor.

...

[THE COURT]: The penalty for Count 1 would be 10 years without the possibility of probation or parole. The C felony, the statute is a little bit oddly worded, but it appears that the minimum penalty would still apply for a Class C felony, so that would be a day or a dollar. That's the minimum penalty?

[PETITIONER]: Yes, Your Honor.

[THE COURT]: And that provision of without the possibility probation and parole does not apply to Count 2. Have you had enough time to discuss the terms or the penalty range with your attorney, sir?

[PETITIONER]: Oh, yes, Your Honor.

[THE COURT]: And you believe you understand that?

[PETITIONER]: I do, I do believe.

...

[THE COURT]: Now, the State has announced that it has withdrawn the pretrial recommendation of 25 years, so what will happen is there aren't - my understanding is that you realize that you're entering a plea here with this entire penalty range open to the Court?

[PETITIONER]: Yes, I do, Your Honor.

[THE COURT]: 30 years or life without the possibility of probation and parole, and in addition, 15 years and $5,000 fine for Count 2. Do you understand that, sir?

[PETITIONER]: Yes, Your Honor.

[THE COURT]: That's the maximum. The Court is free to consider the entire penalty range available to it. As we said, the minimum on Count I is 10 years without the possibility of probation and parole; the minimum on Count 2, a day or a dollar. At the sentencing the Court, if the Court accepts your plea and we go forward with this, the Court will order a presentence investigation report. That will take eight weeks to complete. The case will be continued for sentencing. At sentencing the Court will review the presentence investigation report and it's recommendation, and the recommendation will come in the form of that probation be granted or denied. At the hearing the State may present evidence and argument in favor of it's position. You and your attorney may present evidence and argument in favor of your position, and then

the Court has to make the final decision.

[PETITIONER]: Okay, Your Honor.

[THE COURT]: But the Court is not forced to follow either the recommendation of the presentence investigation report, or the recommendation of the State, or the recommendation of your attorney. I have to make the final decision. Do you understand that?

[PETITIONER]: Yes, Your Honor, I do understand.

[THE COURT]: And I have that entire penalty range available to me.

[PETITIONER]: Yes, Your Honor, I know.

Resp. Ex. C at 16-23.

The court also inquired as to the voluntariness of Petitioner's plea as follows:

[THE COURT]: Now, this is a very important question, Mr. Matteson, these are all very important questions, but has anybody predicted to you what sentence you are going to receive?

[PETITIONER]: No, Your Honor.

[THE COURT]: Has anybody said, okay, you know, this is what I think, but don't tell the judge, has anybody made any kind of a statement like that to you whatsoever?

[PETITIONER]: No, Your Honor.

[THE COURT]: Had anybody made any promises or prognostications of any type?

[PETITIONER]: None whatsoever.

[THE COURT]: So, there are no side agreements or no opinions expressed that you have been told not to reveal to the Court?

[PETITIONER]: No, Your Honor.

[THE COURT]: All right. And you understand that you are under oath and must fully and completely answer all the questions I ask you?

[PETITIONER]: Yes, ma'am, I do.

[THE COURT]: All right. And have you had enough time to think over this decision after discussions with your attorney?

[PETITIONER]: Yes, Your Honor.

[THE COURT]: And have you had enough time to talk to your attorney about making this decision?

[PETITIONER]: Yes, Your Honor.

...

[THE COURT]: Has anyone forced, threatened or coerced you to get you to plead guilty?

[PETITIONER]: No.

[THE COURT]: Has anybody made you any promises of any kind of. you know, we're not talking about the plea recommendations, we're talking about any other type of promises?

[PETITIONER]: No, Your Honor.

[THE COURT]: And there is no plea recommendation, but I'm not - I'm trying to say has anybody made you any other promises of any other kind of benefit other than the disposition here to get you to plead guilty?

[PETITIONER]: No, Your Honor.

[THE COURT]: Are you pleading guilty freely and voluntarily?

[PETITIONER]: Yes, Your Honor.

[THE COURT]: Who made the final decision that you would enter a plea of guilty?

[PETITIONER]: I did, and my attorney.

[THE COURT]: And you're taking the final responsibility for that; is that the case?

[PETITIONER]: Oh, yes, Your Honor.

Resp. Ex. C at 23-26.

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of

counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted).  ...

Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  (citation omitted).  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

Pursuant to Williams, 529 U.S. 362,  the court will consider federal law applicable to the issue Petitioner raises in his § 2254 Petition.  As stated above, the Supreme Court held in Strickland that to establish that counsel's performance was constitutionally ineffective, a petitioner must establish both that the attorney's performance was deficient and that this deficiency prejudiced the petitioner's defense.  Strickland, 466 U.S. at 687.   The Supreme Court has specifically held that Strickland's "two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process. Certainly our justifications for imposing the 'prejudice' requirement in Strickland v. Washington are also relevant in the context of guilty pleas." Hill v. Lockhart, 474 U.S. 53, 57 (1985). The United States Supreme Court further has held that to establish the ineffectiveness of counsel when a guilty plea is entered, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"

Gumangan v. United States, 254 F.3d 701, 705 (8th Cir. 2001) (quoting Hill, 474 U.S. at 59).   "A no-contest guilty plea is valid if 'the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Wilcox v. Hopkins, 249 F.3d 720, 724 (8th Cir. 2001) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).   Where counsel informs a defendant of the range of punishment, the Eighth Circuit has held that the defendant cannot establish either that counsel was ineffective or that he was prejudiced by counsel's alleged error.   See Long v. Armontrout, 938 F.2d 106, 107 (8th Cir. 1991).

Further, Fed. R. Civ. P., Rule 11(b) provides, in relevant part, that:

(1) Advising and Questioning the Defendant. Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
        ...

        (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

Under federal law "'[t]he defendant's right to be apprised of the court's sentencing options is no greater than the provisions'" of Federal Rule 11 which requires only that the court inform a defendant "of the applicable mandatory minimum and maximum sentences.'" United States v. Burney, 75 F.3d 442, 445 (8th Cir. 1996) (quoting Thomas v. United States, 27 F.3d 321, 324 (8th Cir.1994)).   "Rule 11 does not require the sentencing court to inform the defendant of ... the actual sentence he will receive." Id.   Moreover, "noncompliance with the formal requirements of Rule 11" warrants habeas relief "only if the noncompliance results in prejudice to the petitioner." Schriever v. United States, 553 F.2d 1152, 1154 (8th Cir. 1977) (per curiam).   Where a habeas petitioner claimed that his guilty plea was not knowingly and voluntarily made because the trial court failed to advise

him of the maximum punishment allowable for the charges, the Eighth Circuit held that the petitioner's constitutional rights were not violated because the trial court's statements did not mislead the petitioner, because any ambiguity was cleared up before the guilty plea was accepted, and because the petitioner was informed in open court of the maximum sentence he could received for the charged offenses.  Clemons v. Armontrout, 921 F.2d 187, 190 (8th Cir. 1990).

In regard to a defendant's voluntarily and knowingly entering a guilty plea, the United States Supreme Court held in Santobello v. New York, 404 U.S. 257, 261-62 (1971), that:

> [T]he sentencing judge must develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge.  The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known.  There is, of course, no absolute right to have a guilty plea accepted.  (citations omitted)...

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.

Additionally, the Supreme Court has held that:

> A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. (citation omitted).  Admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfied the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, 387, 84 S.Ct. 1774, 1786, 13 L.Ed.2d 908. ... .

> ... Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality.  The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards.  Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.

Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).

Thus, according to the United States Supreme Court, a record must disclose that a criminal

defendant voluntarily and understandingly entered his plea of guilty. See id. at 244. "Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." Id. at 243 n.5 (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969) (internal citation omitted)). "'Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'" Id. quoting McCarthy, 394 U.S. at 466 (internal citation omitted)). While the "record must affirmatively show, under the totality of the circumstances, that [a] plea of guilty was voluntary, and [while] it is the duty of the judge to establish by inquiry as thorough as the circumstances demand its constitutional validity, ... the failure of the state court to make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of Boykin does not automatically vacate the plea." Griffith v. Wyrick, 527 F.2d 109, 112 (8th Cir. 1975). As stated by the Eighth Circuit, "[t]he state may still show, by way of post-conviction proceedings, that the plea was voluntarily made." Id.

Also under federal law attorney's prediction of a sentence does not necessarily render a guilty plea involuntary. Griffith v. Wyrick, 527 F.2d 109, 113 n.6 (8th Cir. 1975) ("If all that was present in this case was an inaccurate prediction of sentence by defendant's counsel ... an otherwise voluntary plea of guilty would not be vitiated.") (citing Masciola v. United States, 469 F.2d 1057, 1059 (3rd Cir. 1972) (per curiam); Swanson v. United States, 304 F.2d 865, 866 (8th Cir.1962) (per curiam))

First, the court notes that Petitioner represented to the trial court that no one had promised him anything in return for his pleading guilty and that he had discussed with counsel the terms of the penalty range. Additionally, even if Petitioner's counsel had mislead him, the trial court advised Petitioner prior to accepting his guilty plea that he could receive a sentence from ten to thirty years

and that sentencing was within the court's discretion. Petitioner repeatedly informed the court that he understood what the court had told him. Petitioner, therefore, cannot claim that he was prejudiced by his counsel's alleged ineffectiveness as required by the second prong of the <u>Strickland</u> test. Moreover, while addressing Petitioner's post-conviction relief motion, the State appellate court held, consistent with <u>Strickland</u>, that to establish ineffective assistance of counsel a defendant must establish that counsel's performance was both unreasonable and prejudicial. Consistent with federal law, including <u>Hill</u>, 474 U.S. at 57, and <u>Gumangan</u>, 254 F.3d at 705, the State appellate court also held that in the guilty plea context a defendant must show that counsel's performance affected his decision to plead guilty and that absent counsel's alleged ineffective assistance he would have insisted on going to trial.

Consistent with the requirements of federal law, prior to accepting Petitioner's guilty plea the trial court informed Petitioner of the maximum sentence he could receive for each count. Petitioner represented to the court that he understood this. Additionally, consistent with federal law, the State appellate court considered that the prior to accepting Petitioner's plea the trial court explained to Petitioner that he had rejected the State's offer of a maximum twenty-five year sentence; that it would review the entire penalty range as to both counts; that the entire penalty range was available to the court; that Petitioner stated that he understood the penalty range on each count; and that Petitioner stated that no one had predicted what his sentence would be nor had anyone made promises to him in regard to his sentence. <u>See</u> Rule 11; <u>Clemons</u>, 921 F.2d at 190; <u>Schriever</u>, 553 F.2d at 1154. Significantly, consistent with federal law, the State appellate court considered that an attorney's mere prediction of a sentence does not necessarily render a guilty plea involuntary. <u>See</u> <u>Griffith</u>, 527 F.2d at 113 n.6; <u>Swanson</u>, 304 F.2d at 866. Consistent with federal law, upon

considering the record of Petitioner's plea hearing the State appellate court concluded that Petitioner's plea was voluntary. See <u>Griffith</u>, 527 F.2d at 112. As such, the court finds that the decision of the State appellate court in regard to the issue raised by Petitioner in his § 2254 Petition is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the State appellate court reasonably applied federal law to the facts of Petitioner's case.

## V.
## CONCLUSION

For the reasons stated above, the court finds that the issue which Petitioner raises in his §2254 Petition is without merit. As such, Petitioner's § 2254 petition for habeas relief should be dismissed in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED**; Doc. 1

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 6th day of  June, 2007.